SHOWA LAW OFFICE, LLLC

ANDREW DAISUKE STEWART   7810-0
735 Bishop Street, Suite 318
Honolulu, Hawaii 96813
Tel. (808) 772-9297
Fax. 1 (866) 772-9407
Email: showalaw@hawaii-bengoshi.com

Attorney for Plaintiffs
NICOLE REYES
HARRY GONZALEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NICOLE REYES; HARRY GONZALEZ, | ) ) ) | Civil No. 20-417 |
| Plaintiffs, | ) ) ) | COMPLAINT; SUMMONS; DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| PETCO ANIMAL SUPPLIES STORES, INC., a Delaware Corporation; DOE DEFENDANTS 1 -20; DOE CORPORATE ENTITIES 1-20; | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## **COMPLAINT**

Come now Plaintiffs, NICOLE REYES and HARRY GONZALEZ, by and through their attorney, SHOWA LAW OFFICE, LLLC, and hereby files this Complaint, and alleges and avers the following causes of action against Defendant PETCO

ANIMAL SUPPLIES STORES, INC. ("Defendant" or "Employer"; DOE DEFENDANTS 1 -20; and DOE CORPORATE ENTITIES 1-20 (hereinafter collectively "Defendants").

## THE PARTIES

1. Plaintiff NICOLE REYES ("Reyes") is and was at all times relevant a resident of the City and County of Honolulu in the State of Hawaii and was employed as a dog groomer by Defendant for approximately 9 years prior to her termination on or about June 9, 2020.

2. Plaintiff HARRY GONZALES ("Gonzalez") is and was at all times relevant a resident of the City and County of Honolulu in the State of Hawaii and was employed by Defendant for approximately 15 years prior to his termination on June 9, 2020, with his last position being the General Manager for the Employer's Kapolei store in Honolulu, Hawaii (hereinafter the "Kapolei Store".)

3. Defendant PETCO ANIMAL SUPPLIES STORES, INC. ("Employer" or "Defendant") is and was at all times relevant, a foreign profit corporation incorporated under the laws of the State of Delaware and operates pet supply stores across the United States, as well as provides pet grooming services.

      4.      DOE DEFENDANTS 1 – 20 and DOE CORPORATIONS 1 – 20 (collectively referred to herein as "DOE DEFENDANTS" or "other presently unidentified Defendants) are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiffs except that they are connected in some manner with Defendant or were the agents, principals, partners, officers, directors, members, servants, employees, employers, representatives, co-venturers, associates, consultants, vendors, suppliers, manufacturers, subcontractors, contractors, sureties, insurers, owners, lessees, sublessees, lessors, guarantors, assignees, assignors, licensees or licensors of Defendants or were in some manner presently unknown to Plaintiffs, engaged in the activities alleged herein, or were in some manner responsible for the injuries and damages to Plaintiffs, or conducted some activity or activities in a negligent or wrongful manner which was a proximate cause of the injuries and damages to Plaintiffs, and Plaintiffs pray for leave to certify the true names, identities, capacities, activities, and responsibilities of DOE DEFENDANTS when the same are ascertained.

## **JURISDICTIONAL STATEMENT**

5. This Honorable Court has federal diversity jurisdiction over the subject matter of the within action pursuant to 28 U.S.C. Section 1332. The amount in controversy is in excess of $75,000.

6. Venue is appropriate in the District Court of the District of Hawaii pursuant to 28 U.S.C. Section 1391.

## **INTRODUCTION**

7. One of the mains sources of revenue for Defendant is its dog grooming services.

8. Unlike some of its competitors, Defendant accepts any and all kinds of breeds for its grooming services, without limitation, including certain dog breeds which have breathing and other health problems.

9. Certain dog breeds with health problems can experience significant stress from receiving grooming services, which can lead to health complications and even death, including but not limited to, English Bulldogs.

10. English Bulldogs, in particular, are known to suffer from breathing problems due to the structure of their face and

overbreeding, which can be exacerbated by stress, as well as exposure to heat or hot weather.

11. Hawaii Revised Statute § 711-1109 (a) ("Cruelty to animals in the second degree") states that a person commits the offense of cruelty to animals in the second degree if the person intentionally, knowingly, or recklessly: (a) Overdrives, overloads, tortures, torments, beats, causes substantial bodily injury to, or starves any animal, or causes the overdriving, overloading, torture, torment, beating, or starving of any animal[.]

12. Hawaii Revised Statute § 711-1109 (h) also states that a person commits the offense of cruelty to animals in the second degree if a person assists another in the commission of any act specified in § 711-1109 (a).

## **FACTUAL ALLEGATIONS**

13. In July 2019, a customer brought in an English Bulldog in to the Kapolei Store to be groomed (hereinafter "English Bulldog #1").

14. After the owner of English Bulldog #1 returned home after the animal received grooming services at the Kapolei Store, English Bulldog #1 began experiencing breathing problems.

5

15. The owner took English Bulldog #1 to the veterinarian the same day but the animal died overnight.

16. On or about May 31, 2020, another customer brought in an English Bulldog into the Kapolei Store to be groomed (hereinafter "English Bulldog #2"), together with a Pomeranian.

17. Another groomer at the Kapolei Store performed grooming services on the Pomeranian.

18. During and/or after grooming services were performed on the Pomeranian, Reyes noticed that English Bulldog #2 was excreting excess mucus from its face and determined that it was in the best interest of the animal's health not to perform grooming services that day, as English Bulldogs are prone to stress, which may exacerbate certain health conditions.

19. The owner of English Bulldog #2 retrieved the animal from the Kapolei Store and went home without having any grooming services performed that day.

20. It was later discovered that English Bulldog #2 was taken to the veterinarian the same day and died shortly thereafter of respiratory complications.

21. On June 1, 2020, Reyes had a discussion with Maria ("Vanegas") the District General Manager, and urged the

Employer to adopt a policy of not accepting English Bull Dogs for grooming between the hours of 10:00 a.m. and 5:00 p.m. to minimize adverse health risks to the animal during the hottest hours of the day or, in the alternative, not to service English Bulldogs at all, especially after the above-described incidents involving the death of two English Bulldogs within the past tent (10) months.

22. On June 2, 2020, Gonzalez had a discussion with "Vanegas" and urged the Employer to implement a system whereby every dog owner who brings in an animal to be groomed would be required to answer a set of written questions about the animal's health.

23. During his discussion with "Vanegas", Gonzalez mentioned the fact that Employer's competitor, "Petsmart" had a policy of not accepting certain breeds of dogs for grooming precisely because the stress could result in exacerbating pre-existing health conditions inherent in certain breeds, such as English Bulldogs.

24. On or about June 6, 2020, Gonzalez and Reyes prepared a written "Check-In Questionnaire" consisting of

questions to be posed to dog owners seeking grooming services, before the Employer would accept the dog for grooming services.

25. The purpose of the questionnaire Gonzalez and Reyes prepared was to reduce and/or minimize the risk that a dog, especially those breeds with pre-existing health conditions, would suffer mentally and physically as a result of stress associated with receiving grooming services, which, in turn, may result in injury or death.

26. On or about June 7, 2020, Gonzales presented the "Check-In Questionnaire" to Vanegas but Vanegas expressed significant reluctance in adopting the use of the questionnaire.

27. When Vanegas expressed her reluctance in adopting the use of said questionnaire, Gonzalez insisted that it was necessary to safeguard the health and welfare of the dogs brought into the Kapolei Store for grooming services.

28. Gonzales further expressed his concern that the lack of implementing the use of the questionnaire would unnecessarily place certain dogs brought in for grooming to suffer physically and potentially risk illness or death.

29. Between June 2, 2020 and June 8, 2020, both Gonzales and Reyes had a discussion with Vanegas, whereby

8

they urged PETCO to implement other safety procedures for dogs being brought in for grooming services, including but not limited to, placing an age restrictions for dogs receiving grooming services (as most injuries/death occur in dogs over the age of 10), as well as adding additional health restrictions to PETCO's grooming safety policy (e.g., heart murmurs, hip dysplasia, and other serious health conditions), which Venegas summarily rejected.

30. On or about June 9, 2020, Vanegas walked into the Kapolei Store and informed Reyes and Gonzales that they "no longer worked for PETCO" and terminated their positions on the spot for opposing Employer's inhumane practice of accepting any and all dogs for grooming services, without implementing policies and procedures to safeguard the health and welfare of the animals, which Plaintiffs urged Employer to adopt.

## COUNT I – VIOLATION OF HRS SECTION 378-62
## (HAWAII WHISTLE-BLOWER PROTECTION STATUTE)

31. Plaintiffs repeat and realleges and by reference incorporates the allegations contained in the above paragraphs.

32. The Employer terminated Plaintiffs employment on or about June 9, 2020 for reporting the Employer's failure/refusal

to implement reasonable additional safety procedures and protocols to prevent illness and death in certain breed of dogs resulting from stress associated with animals undergoing grooming services, which amounted to animal cruelty in violation of Hawaii Revised Statute § 711-1109.

33. As a result of the above-described unlawful discharge and/or discrimination Plaintiffs were subjected to by Employer, Plaintiffs incurred damages in amounts to be proven at trial.

## COUNT II - UNLAWFUL TERMINATION IN CONTRAVENTION OF PUBLIC POLICY

34. Plaintiffs repeat and reallege and by reference incorporate the allegations contained in the above paragraphs.

35. Employer's termination of Plaintiff as retaliation for Plaintiff reporting the Employer's inhumane business practices was in violation of public policy in favor of preventing cruelty to animals.

36. As a result of the unlawful discharge described above, Plaintiffs have incurred damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered in its favor against all Defendants as follows:

A. For judgment in its favor on each and every count as alleged against the Defendants claimed herein, and presently unidentified Defendants, jointly and severally, in the type of relief or amount of damage set forth therein of for such amount as may be proven at trial.

B. For special damages against Defendants and presently unidentified Defendants, and each of them, jointly and severally, in an amount to be proven at trial.

C. Plaintiffs be awarded further special, general, and/or consequential damages.

D. Punitive damages as may be proven at trial.

E. Plaintiffs be awarded all costs of suit, including reasonable attorney's fees and costs, interest, all costs of investigation, and such other and further relief as the Court deems equitable in the premises.

DATED: Honolulu, Hawaii, October 1, 2020.

*/s/ Andrew D. Stewart*
_____
ANDREW DAISUKE STEWART
SHOWA LAW OFFICE, LLLC
Attorney for Plaintiffs
NICOLE REYEES
HARRY GONZALEZ